UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DEBORAH A. WEINBERGER ) | CIVIL ACTION NO. |
| ) | MAGISTRATE JUDGE |
| Plaintiff, ) | 04-10731 RWZ |
| ) | |
| v. ) | |
| ) | RECEIPT # 55745 |
| ARNE OJALA and DOWN CAPE ) | AMOUNT $ 150 |
| ENGINEERING, INC. ) | SUMMONS ISSUED 2 |
| ) | LOCAL RULE 4.1 |
| Defendants ) | WAIVER FORM |
|  | MCF ISSUED |
|  | BY DPTY. CLK. |
|  | DATE 4-12-04 |

## CIVIL COMPLAINT

### INTRODUCTORY STATEMENT

1. By this action Plaintiff, Deborah A. Weinberger, seeks to recover the damages she suffered as a result of Defendants Arne Ojala and Down Cape Engineering, Inc.'s professional malpractice in failing to timely file a Definitive Subdivision Plan with the Planning Board of the Town of Barnstable, Massachusetts for the subdivision of land in located in Barnstable, Massachusetts. Defendant's negligence caused Plaintiff to lose the benefit of the "zoning freeze" protection necessary for the Planning Board's approval of the proposed subdivision, to which she was otherwise entitled, preventing her from subdividing her land. For Defendants' unfair and deceptive business practices in connection with their malpractice, Plaintiff seeks multiple damages and her attorney's fees pursuant to the Massachusetts Consumer Protection Statute, Mass. G.L. Chapter 93A.

## JURISDICTION AND VENUE

2.  28 U.S.C., section 1332 confers subject matter jurisdiction over this action: Plaintiff and both Defendants are citizens of diverse states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

3.  Pursuant to 28 U.S.C., venue is appropriate where both defendants reside and have their place of business in this judicial district.

## PARTIES

4.  Plaintiff, Deborah A. Weinberger ("Plaintiff" or "Ms. Weinberger") is a domiciled in the State of Connecticut with a residence at 130 North Street, Watertown, Connecticut.

5.  Defendant Arne Ojala ("Mr. Ojala") is domiciled in the Commonwealth of Massachusetts with a residence at 1955 Main Street, West Barnstable, Massachusetts (02668). Mr. Ojala is a Registered Professional Land Surveyor and a Registered Professional Professional Engineer with licenses from the Commonwealth of Massachusetts.

6.  Defendant Down Cape Engineering, Inc. is a corporation, duly organized under the laws of the Commonwealth of Massachusetts, with a principal place of business at 939 Main Street, Yarmouth Port, Massachusetts. Mr. Ojala is the owner and President of Down Cape Engineering, Inc.

## FACTS COMMON TO ALL COUNTS

7.  In the year 2000, Mrs. Weinberger was the beneficiary of a trust, established by her parents Jerome and Marian Weinberger, that owned two adjoining parcels of land consisting of separate lots of record, located on Main Street, Cotuit, Town of Barnstable,

Massachusetts ("the Locus" or "the Property").[1] Under the zoning by-laws then in force in the Town of Barnstable, the Locus included sufficient area for Plaintiff to divide the Property into three lots.

8.  For several years, Mrs. Weinberger had been planning to subdivide the Property into three lots.

9.  In or before September 2000, Town of Barnstable planning officials publicized a proposal to amend the Town zoning By-Law to increase the minimum bulk area requirement for zoning district in which the property lies from one acre to two acres. Under the proposed two-acre minimum bulk area zoning requirement the Property would not be sub-dividable.

10. Pursuant to M.G.L. c. 40A, section 6, the owner of a parcel of "sub-dividable" land may, by the timely submission of a preliminary subdivision plan followed within seven months by the submission of a definitive subdivision plan, effectuate a "zoning freeze" of existing zoning restrictions with respect to such plan. The pertinent text of M.G.L. c. 40A, section 6 is as follows:

> "If a definitive plan, or a preliminary plan followed within seven months by a definitive plan, is submitted to a planning board for approval under the subdivision control law, and written notice of such submission has been given to the city or town clerk before the effective date of ordinance or by-law, the land shown on such plan shall be governed by the applicable provisions of the zoning by-law, if any, in effect at the time of the first such submission while such plan or plans are being processed under the subdivision control law, and, if such definitive plan or an amendment thereof is finally approved, for eight years from the date of the endorsement of such approval...."

11. Surveyors of average competence and experience are expected to know the Massachusetts and local zoning laws and the Massachusetts Subdivision Control Law (M.G.L. c. 41, section 81K, et seq.) and are regularly called upon, in the ordinary course

---

[1] Mrs. Weinberger acquired the Property from the Trust in or about April 2001.

3

of their professional practice, to observe and meet various deadlines, including those necessary to effect a zoning freeze under M.G.L. c. 40A, section 6.

12. In or about September 2000, Mrs. Weinberger hired Defendants to prepare and file a subdivision plan dividing the Locus into three lots. Plaintiff specifically hired Defendants and to protect the plan from the proposed zoning change by the appropriate filings. (See Exhibit "A" hereto). She herself was unfamiliar with the applicable filing deadlines and relied upon Defendants for their expertise in this area.

13. Defendants expressly represented to Mrs. Weinberger that they were knowledgeable and experienced in the preparation and submission of such plans and that they would preserve her right to subdivide the Property by the appropriate, timely subdivision plan filings.

14. In or about October 2000, Defendants prepared a preliminary subdivision plan dividing the Locus into three lots. On or about October 5, 2000, Defendants submitted such Plan to the Planning Board. On or about December 15, 2000, the Planning Board approved Plaintiff's preliminary subdivision plan. (See Exhibit "B" hereto).

15. In November 2000, the Town of Barnstable enacted changes to its zoning by-law that, absent zoning freeze protection, prevented Plaintiff from dividing the Locus into three lots. To preserve the one-acre bulk zoning requirement with respect to the Property, Defendants were required to file a definitive plan by May 5, 2001.

16. Plaintiff, lacking experience in land development, was unaware of the date by which the definitive plan had to be filed to perfect her zoning freeze. On several occasions between January and May of 2001, Plaintiff inquired of Defendants and their

4

agents regarding the status of the definitive plan submission and Defendants reassured her that they were well aware of the filing deadline and would meet it.

17.    On February 28, 2001, Mr. Ojala's assistant, Joanne McMahon ("Ms. McMahon"), wrote to Mrs. Weinberger concerning the need to finalize and timely file the definitive plan. In so doing, Ms. McMahon incorrectly identified June 17, 2001 as the date by which the definitive plan needed to be filed to perfect the zoning freeze. (See Exhibit "C" hereto).

18.    Mr. Ojala delegated primary responsibility for Plaintiff's Definitive Plan to Ms. McMahon, even though he had led Mrs. Weinberger to believe he would handle it himself. If Mrs. Weinberger had known that the work would be done by Mr. Ojala's associate and not by Mr. Ojala directly, she would have found another engineer to make the required filing.

19.    Without excuse, Defendants failed to file Plaintiff's definitive plan with the Planning Board until July 15, 2001, well past the purported June 17th deadline and the actual deadline of May 5, 2001.

20.    On or about October 29, 2001, the Planning Board unanimously voted to deny Plaintiff's Definitive Plan for the reason that the proposed subdivision did not conform to the new two-acre zoning and that "the Definitive Plan should have been filed on May 5, 2001 to preserve the protections afforded the Preliminary Plan." (See Exhibit "D" hereto).

21.    Notwithstanding their knowledge that they had missed the May 5, 2001 deadline for the filing of the Definitive Plan, Defendants failed to inform Plaintiff that such error was fatal to her effort to divide the Locus. To the contrary, Defendants advised Mrs.

Weinberger to continue to pursue an approval of the Definitive Plan, and had their own attorney act on her behalf in connection with an appeal of the Planning Board's decision, when they knew or should have known that such pursuit was totally futile. Defendants did so for the sole purpose of distracting and discouraging Mrs. Weinberger from pursuing claims against them relating to their malpractice.

22. The value of the Locus as sub-dividable into three buildable lots exceeds the value of the Locus in its present, permanent configuration by approximately $900,000.00.

## COUNT I

### (Breach of Contract)

23. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-22 above.

24. Defendants expressly warranted to Plaintiff that they would obtain a zoning freeze for Plaintiff with respect to the Locus by the timely filing of subdivision documents, and impliedly warranted that they would perform their work in a careful and competent manner.

25. By failing to effectuate a "zoning freeze" with respect to the Property, Defendants breached their warranties and breached their contract with Plaintiff, causing Plaintiff damages of not less than $900,000.00.

## COUNT II

### (Negligence/Professional Malpractice)

26. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-25 above.

27. Defendants owed Plaintiff a duty to perform the work for which they were hired in a careful and competent manner.

28. Defendants, by the above described carelessness and neglect, breached their duty to Plaintiff by failing to file Plaintiff's Definitive Plan in time to preserve her right to subdivide the Property. In so doing, Defendants caused Plaintiff damages in the amount of the difference between the fair market value of the Property in its present configuration and the value of the property were it dividable into three lots.

## COUNT III

### (Violation of Massachusetts Consumer Protection Statute, G.L. Chapter 93A)

29. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-28 above.

30. At all relevant times hereto, Defendants were engaged in trade or commerce for purposes of Mass. G.L. Chapter 93A, section 2.

31. By promising and re-assuring Mrs. Weinberger that they would file a Definitive Plan in time to preserve her ability to subdivide the Property, and by missing the applicable filing deadline, Defendants engaged in an unfair and deceptive business practice in violation of Mass. G.L. Chapter 93A.

32. By misrepresenting the deadline for the filing of the Definitive Plan at a time when Mrs. Weinberger could have, had she known the correct deadline, hired another engineer to assist her in perfecting a zoning freeze, Defendants engaged in an unfair and deceptive business practice violation of Mass. G.L. Chapter 93A.

33. By Mr. Ojala's delegation of primary responsibility for Mrs. Weinberger's Definitive Plan to his junior associate instead of handling it directly and personally, as he

had represented to Mrs. Weinberger he would, Defendants engaged in an unfair and deceptive business practice violation of Mass. G.L. Chapter 93A.

34. After failing to meet the May 5, 2001 deadline, Defendants instructed their own attorney, in a gross conflict of interest, to act on Plaintiffs behalf rather than advised her of her need for separate counsel. As a result, Mrs. Weinberger spent over ten months litigating a pointless appeal of the Planning Board's decision, an appeal designed to keep her "under control" and to discourage her from pursuing claims against Defendants. Such efforts to distract and divert Mrs. Weinberger from her appropriate remedy constituted unfair and deceptive business practices violation of Mass. G.L. Chapter 93A.

35. Defendant's knowingly and willfully violated Mass. G.L. Chapter 93A.

36. On February 24, 2004, Plaintiff served Defendants by certified mail, return receipt requested, with a written demand for relief pursuant to G.L. Chapter 93A, section 9, a copy of which is attached hereto as Exhibit "D". Defendants failed to respond to such letter within thirty days of its receipt.

**WHEREFORE,** Plaintiff requests that the Court:

1. with respect to Counts One and Two, enter judgment for Plaintiff, jointly and severally against Defendants, in an amount of damages to be determined at trial, plus costs and attorney's fees to the extent allowable by law;

2. with respect to Count Three, enter judgment for Plaintiff, jointly and severally against Defendants, in an amount of damages to be determined at trial, doubled or trebled, and her reasonable attorney's fees and costs; and

3. enter such other and further relief as the Court finds just and equitable.

**JURY DEMAND: PLAINTIFF DEMANDS TRIAL BY JURY**

Plaintiff,

DEBORAH A. WEINBERGER

By her attorneys:

_____
Jerry C. Effren (BBO# 630845)
Law Offices of Jerry C. Effren
25 West Union Street
Ashland, MA 01721
(508/ 881-4950)

F:\Data\WORD\W\Weinberger\Deborah\PLEADINGS\COMPLAINT.doc

9