# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10731RWZ

| | |
|---|---|
| DEBORAH A. WEINBERGER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ARNE OJALA and DOWN CAPE | ) |
| ENGINEERING, INC. | ) |
| | ) |
| Defendants | ) |

## PLAINTIFF'S RULE 26(2) EXPERT DISCLOSURE

Now comes Plaintiff and identifies and discloses Mr. Joseph Clancy ("Mr. Clancy"),

Clancy Appraisal Co., Inc., Merchant's Wharf- Suite 202, 80 Davis Straits, Falmouth,

Massachusetts, as her expert witness in this action. Mr. Clancy is a certified real estate

appraiser who will testify as to the value of the real property that is the subject matter of

this litigation.

A copy of Mr. Clancy's signed Preliminary Complete Appraisal ("the Appraisal"),

containing his opinion and the basis and reasons therefore and the data and information

used in forming his opinion, is attached hereto as Exhibit "A". Mr. Clancy's

qualifications are stated in the Appraisal. The compensation to be paid to Mr. Clancy for

his study and testimony, along with a listing of all cases in which he has testified as an

expert at trial or by deposition within the preceding four years, are contained in Mr.

Clancy's signed statement attached hereto as Exhibit "B".

FeδEx

**CERTIFICATE OF SERVICE**

hereby certify that on this date a true copy of the
above document was served upon the attorney of
record for each party herein by mail / by hand / by
fax transmittal (telecopy).
Date: 9/16/04

Respectfully submitted,
Plaintiff, Deborah A. Weinberger
By her attorneys:

Jerry C. Effren, BBO# 151580
Michael J. O'Brien, BBO# 630845
Law Offices of Jerry C. Effren
25 West Union Street
Ashland, MA 01721
(508/881-4950)

F:\Data\WORD\W\Weinberger\Deborah\PLEADINGS\expert disclosure.doc

# PRELIMINARY COMPLETE APPRAISAL

## UTILIZING A SUMMARY NARRATIVE APPRAISAL REPORT OF THE PROPERTIES LOCATED AT 1767 MAIN STREET & 1783 MAIN STREET COTUIT, MASSACHUSETTS 02635

### PREPARED FOR:

ATTORNEY JERRY C. EFFREN
LAW OFFICES of JERRY C. EFFREN
25 WEST UNION STREET
ASHLAND, MASSACHUSETTS 01721

### EFFECTIVE DATE OF APPRAISAL:

AUGUST 27, 2004

### PREPARED BY:

CLANCY APPRAISAL CO, INC
REAL ESTATE APPRAISERS AND CONSULTANTS
MERCHANT'S WHARF – SUITE 202
80 DAVIS STRAITS
FALMOUTH, MASSACHUSETTS 02540

# TABLE OF CONTENTS

**PAGE NOS.**

## PART I – INTRODUCTION

Cover letter ................................................................................................. 5

Certification of Appraisal .......................................................................... 7

Statement of Limiting Conditions............................................................. 8

Summary of Salient Facts & Conclusions ............................................. 11

Subject Photographs.............................................................................. 11a

## PART II – FACTUAL DATA

Purpose of Appraisal ............................................................................... 13

Extent of Collecting, Confirming and Reporting Data ......................... 14

Area, Town & Neighborhood Data ........................................................ 15

Property Data .......................................................................................... 18

## PART III – ANALYSES & CONCLUSIONS

Highest & Best Use.................................................................................. 22

Valuation Methodology, Analysis & Conclusion ................................. 23

The Sales Comparison Approach............................................................ 24

Indicated Value via the Sales Comparison Approach .......................... 27

Reconciliation & Final Value Estimate ................................................. 28

## TABLE OF CONTENTS (cont'd)

**PAGE NOS.**

### PART IV – EXHIBITS & ADDENDA

Property Deeds ................................................................................................ 30

Existing Lots ................................................................................................... 37

Preliminary Subdivision of Land in Cotuit ..................................................... 38

Town of Barnstable Planning Board Decision ................................................. 39

Qualifications of John J. Hopkins .................................................................... 40

Qualifications of Joseph M. Clancy ................................................................ 42

**PART I - INTRODUCTION**

**CLANCY APPRAISAL CO., INC.**
**Merchant's Wharf – Suite 202**
**80 Davis Straits**
**Falmouth, MA 02540-3910**
**(508) 540-9515 – Fax (508) 540-6586**
**Email:  joseph.m.clancy@verizon.net**

Attorney Jerry C. Effren
Law Offices of Jerry C. Effren                                      August 30, 2004
25 West Union Street
Ashland, Massachusetts 01721

RE:  The Weinberger Properties
1767 & 1783 Main Street
Cotuit, Massachusetts 02635

Dear Attorney Effren:

In accordance with your request, we have performed a PRELIMINARY Complete Appraisal of 1767 & 1783 Main Street, Cotuit, Massachusetts utilizing a Summary Narrative Appraisal Report in which the subject properties were analyzed under two different scenarios.  1) As the existing lot configurations, 2) Under the Preliminary Subdivision of land in Cotuit, Massachusetts prepared for Jerome L. & Marian Weinberger, Plan #789, dated October 3, 2000 as depicted on the attached plan.

The purpose of this appraisal is to provide our client, Law Offices of Jerry C. Effren, with an estimate of the Market Value of the real property located at #1767 and #1783 Main Street, Cotuit, Massachusetts.  This property valuation is to assist him in a civil suit against an engineer for professional malpractice by the owner of the real property located at #1767 and #1783 Main Street, Cotuit Massachusetts.

This report is based upon the appraiser's personal inspection of the land and building, reviewing an engineer's plot plan for the above-mentioned Preliminary Subdivision plan, and after a thorough examination of all of the data contained in this report, it is our opinion that the Market Values, as defined, of the above-captioned scenarios, as of August 27, 2004, are:

**#1767 Main Street (in its existing configuration) =**          **$1,000,000**
**#1783 Main Street (in its existing configuration) =**          **$1,600,000**

**Preliminary Subdivision Analysis:**

**#1767 Main Street (a.k.a. lot #34) with r.o.w. easement (-$50,000)**
**and loss of back land (-$50,000)**                                          = $  900,000
**#1783 Main Street (a.k.a. lot #35) with loss of back land (-$50,000)**     = $1,550,000
**Lot #33 Lowell Road with the r.o.w. easement across  lot #34**
**and after the road improvements to Lowell Road**                           = $  840,000

5

Should questions arise in connection with this report, or if we may be of further assistance to you in this matter or any other, please feel free to call us.

Respectfully submitted,

*Joseph M. Clancy*

**Appraiser:**
Joseph M. Clancy, ASA, MRA
MA Certified General
Real Estate Appraiser #76

*John J. Hopkins*

**Appraiser:**
John J. Hopkins
MA Real Estate Appraiser
License #1174

6

# CERTIFICATION OF APPRAISAL

1. The statements of fact contained in this report are true and correct.
2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and they are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.
3. We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
4. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
5. Our engagement in this assignment was not contingent upon developing or reporting predetermined results.
6. Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
7. Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice ("USPAP")*.
8. Joseph M. Clancy & John J. Hopkins made personal inspections of the property that is the subject of this report.
9. No one provided significant real property appraisal assistance to the persons signing this certification.
10. This appraisal report has been made in conformity with and is subject to the requirements of the Code of Professional Ethics and the Standards of Professional Conduct of the American Society of Appraisers, and the Massachusetts Board of Real Estate Appraisers, with which the Supervisory Appraiser is affiliated.
11. The appraisers are competent to complete reports in accordance with the Competency Provisions in the USPAP, and the Departure Provision of USPAP does not apply.

We estimate the Market Values, as defined, of the subject property, as of August 27, 2004, to be:

*Existing configuration:*
#1767 Main Street    = $1,000,000          #1783 Main Street    = $1,600,000
*Preliminary Subdivision Analysis:*
#1767 Main Street (a.k.a. lot #34) with r.o.w. easement (-$50,000)
and loss of back land (-$50,000)                                          = $  900,000
#1783 Main Street (a.k.a. lot #35) with loss of back land (-$50,000)     = $1,550,000
Lot #33 Lowell Road with the r.o.w. easement across  lot #34
and after the road improvements to Lowell Road                           = $  840,000

*Joseph M. Clancy*                                    *John J. Hopkins*

**Appraiser:**                                         **Appraiser:**
Joseph M. Clancy, ASA, MRA                             John J. Hopkins
MA Certified General                                   MA Real Estate Appraiser
Real Estate Appraiser #76                              License #1174

# STATEMENT OF LIMITING CONDITIONS

The certification of the appraiser appearing in this appraisal report is subject to the following conditions and to such other specific and limiting conditions as are set forth by the appraiser in the report.

1. The appraiser assumes no responsibility for matters of a legal nature affecting the property appraised or the title thereto, nor does the appraiser render any opinion as to the title, which is assumed to be good and marketable. The property is appraised as though under responsible ownership.

2. Any sketch in this report may show approximate dimensions and is included to assist the reader in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser is not required to give testimony or appear in court because of having made this appraisal with reference to the property in question, unless arrangements have been previously made therefor.

4. Any distribution of the valuation in the report between land and improvements applies only under the existing program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and are invalid if so used.

5. The appraiser assumes that there are no hidden or unapparent conditions of the property, no known existence of hazardous substances or detrimental environmental conditions, subsoil or structures, which would render it more or less valuable. The appraiser assumes no responsibility for such conditions or for engineering, which might be required to discover such factors. Any statement in this appraisal relative to the highest and best use, the bearing capacity of the soil, and the uses to which the property can and will be put, are based on the writer's conclusions and on a surface examination only. Soil or engineering tests made by engineers indicating contrary results may affect the conclusions reported herein. The writer assumes no liability beyond surface examination for the lack of engineering data required to support proposed uses for the property.

6. Information, estimates and opinions furnished to the appraiser and contained in this report were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished the appraiser can be assumed by the appraiser.

8

# STATEMENT OF LIMITING CONDITIONS (cont'd)

7. Disclosure of the contents of this appraisal report is governed by the Bylaws and Regulations of the professional appraisal organizations with which the appraiser is affiliated.

8. Neither all, nor any part of the content of the report, or copy thereof (including conclusions as to property value, the identity of the appraiser, professional designations, reference to any professional appraisal organizations, or the firm with which the appraiser is connected) shall be used for any purposes by anyone but the client specified in the report, the borrower if appraisal fee paid by same, the mortgagee or its successors and assigns, mortgage insurers, consultants, professional appraisal organizations, any state or federally approved financial institution, any department, agency or instrumentality of the United States or any state or the District of Columbia, without the previous written consent of the appraiser; nor shall it be conveyed by anyone to the public through advertising, public relations, news, sales, or other media, without the written consent and approval of the appraiser.

9. On all appraisals subject to satisfactory completion, repairs, or alterations, the appraisal report and value conclusions are contingent upon completion of the improvements in a workmanlike manner.

10. This assignment was undertaken for the client specified herein. The appraiser does not recognize or assume any duty to persons other than that client in the formulation of this report and its conclusions. The client may make such reasonable use of this report as is consistent with the function of the report, buy any third or other party into whose possession the report may come should not assume that its rationales or conclusions will serve any other client or function.

11. Note the use of the single quote (') will denote feet in this report.

12. Environmental Disclaimer:  The value estimated in this report is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions. The appraiser is not an expert in the identification of hazardous substances or detrimental environmental conditions. The appraiser's routine inspection of and inquiries about the subject property did not develop any information that indicated any apparent significant hazardous substances or detrimental environmental conditions which would affect the property negatively. It is possible that tests and inspections made by a qualified hazardous substance and environmental expert would reveal the existence of hazardous materials and environmental conditions on or around the property that would negatively affect its value.

## STATEMENT OF LIMITING CONDITIONS (cont'd)

13. The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific compliance survey or analysis of this property to determine whether or not the physical aspects of the improvements are in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property, together with a detailed analysis of the requirements of the ADA, could reveal that the property is not in compliance with one or more of the requirements of the Act. If so, this fact could have a negative impact upon the value of the property. Since we have no direct evidence relating to this issue, we did not consider possible non-compliance with the requirements of ADA in estimating the value of the property.

14. The Gramm-Leach-Bliley Act was signed into law on November 12, 1999. The intent of the Act is to protect consumer's personal information obtained by a financial institution from being disclosed or released without notice and without the permission of the consumer. Compliance with the law became mandatory after July 1, 2001. These regulations apply to appraisers as well as other providers of financial services, and apply to nonpublic personal information, or personally identifiable financial information.

# PHOTOGRAPH ADDENDUM

| | | | | | |
|---|---|---|---|---|---|
| Borrower/Client | LAW OFFICES OF JERRY C. EFFREN | | | | |
| Property Address | 1783 & 1767 MAIN STREET | | | | |
| City | COTUIT | Ccunty | BARNSTABLE | State | MA |
| Lender | LAW OFFICES OF JERRY C. EFFREN | | | Zip Code | 02635 |



Front of Property
1767 & 1783 Main Street, Cotuit, MA



Rear of Property

Form LPICPIX — *TOTAL for Windows* appraisal software by a la mode, inc. — 1-800-ALAMODE

# PHOTOGRAPH ADDENDUM

| Borrower/Client | LAW OFFICES OF JERRY C. EFFREN | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1783 & 1767 MAIN STREET | | | | | |
| City | COTUIT | County | BARNSTABLE | State | MA | Zip Code 02635 |
| Lender | LAW OFFICES OF JERRY C. EFFREN | | | | | |



Street Scene



View of Nantucket Sound from the Main House

# PHOTOGRAPH ADDENDUM

| Borrower/Client | LAW OFFICES OF JERRY C. EFFREN | | | | |
|---|---|---|---|---|---|
| Property Address | 1783 & 1767 MAIN STREET | | | | |
| City | COTUIT | County | BARNSTABLE | State | MA | Zip Code | 02635 |
| Lender | LAW OFFICES OF JERRY C. EFFREN | | | | |



Rear of the Vacant Lot



Lovell's Road which is at the Rear of Property

# PHOTOGRAPH ADDENDUM

| Borrower/Client | LAW OFFICES OF JERRY C. EFFREN | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1783 & 1767 MAIN STREET | | | | | |
| City | COTUIT | County | BARNSTABLE | State | MA | Zip Code  02635 |
| Lender | LAW OFFICES OF JERRY C. EFFREN | | | | | |



View of Nantucket Sound from the Vacant Lot

Form LPICPIX — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

PART II - FACTUAL DATA

# PURPOSE OF APPRAISAL

Our client, Law Offices of Jerry C. Effren, has hired this firm for our expertise in real property valuation to assist him in a civil suit against an engineer for professional malpractice by the owner of the real property located at #1767 and #1783 Main Street, Cotuit Massachusetts.  The purpose of this appraisal is to provide our client with an estimate of the Market Value of the real property located at #1767 and #1783 Main Street, Cotuit, Massachusetts both: (1) 'As Is' under the current zoning ordinance, and (2) under the 'hypothetical' that the property could be subdivided in accordance with a subdivision plan approved by the Town of Barnstable Planning Board in December 2000. This report is to assist our client in settlement discussions and/or litigation.

**Market Value** is defined as:
"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is consummation of a sale as a specific date and passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;
- both parties are well informed or well advised and each acting in what he/she considers his/her own best interest;
- a reasonable time is allowed for exposure in the open market;
- payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
- the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."[1]

In accordance with the Jurisdictional Exception of the USPAP, the Market Value definition of the court having jurisdiction in any litigation regarding the value of real estate the value of real estate applies.

The definition of <u>Market Value in Massachusetts</u> is:
"The highest price which a hypothetical willing purchaser would pay to a hypothetical willing vendor in an assumed free and open market."[2]

**Fee Simple Estate** is defined as:
"Absolute ownership unencumbered by any other interest or estate subject only to the four powers of government."[3]

---

[1] FIRREA, Office of the Comptroller of the Currency (Occ), Rule 12, CFR 34.42 (f)
[2] Epstein v. Boston Housing Authority (1945) 317 Mass. 297
[3] <u>The Dictionary of Real Estate Appraisal</u>, Second Edition, American Institute of Real Estate Appraisers, 430 North Michigan Avenue, Chicago, Illinois, Page 120.

# EXTENT OF COLLECTING, CONFIRMING AND REPORTING DATA

The appraisers were requested to do a Complete Appraisal utilizing a Summary Narrative Appraisal Report. This section addresses the methods and sources used for the collection and analysis of data. This is an added step taken to comply with the Competency Provision of USPAP.

Accurately estimating the Market Value of the subject property requires an inspection of the subject property, and an analysis of the subject site and existing improvements. An examination of the subject's state, county, community and neighborhood focuses on the social, economic, governmental and environmental influences that effect value and the supply and demand of similar use properties within each market. Discovery of specific data such as recent sales and listings, and other credible information has a great relevance on value. Correlation of this information begins with analyzing the highest and best use of the land, the site and the improvements. The process ends with a valuation analysis that considers all three approaches to value, which results in a final value estimate.

Years of appraisal experience, conversations with local real estate brokers, investors, and developers, and continuing education through the Massachusetts Board of Appraisers have led to this appraiser's knowledge of the current marketplace.

Pertinent factual data was verified by anyone of the following: town officials, the Registry of Deeds, and the Cape Cod & Island Multiple Listing Services. The appraisers have appraised numerous other residential properties in the Upper Cape Cod marketplace within the last year and have satisfied the Competency Provision of USPAP.

# AREA, TOWN AND NEIGHBORHOOD DATA

The subject property is located in the historic village of Cotuit in the Town of Barnstable, which is within the County of Barnstable, Massachusetts. Barnstable is one of fifteen towns located on the peninsula known as Cape Cod, jutting out into the Atlantic Ocean from the southeastern most corner of the Massachusetts mainland. Traditionally, Cape Cod has attracted mostly retirement and tourist populations to an area rural in nature and dominated by the forces of the sea. However, during the past fifteen to twenty years, the population of this peninsula has exploded, resulting in a change to generally suburban character as we move through the 2000's. Presently, every town on Cape Cod is experiencing "growing pains", consisting primarily of an inability of municipal services to keep up with the growth combined with significant threats to the natural environment.

The county voters overwhelmingly voted to adopt a formal County Charter in the 1988 election and then adopted the Cape Cod Commission in 1990. These aspects of county government are intended to allow the county to act and function as a more cohesive regional entity in matters of environmental protection, coastal management, transportation, affordable housing, economic development, and other regional priorities that transcend town boundaries in their scope and impact.

The bridges across the Cape Cod Canal leading to all points north and west are approximately 10 miles northwest, Hyannis, the hub of Cape Cod, is approximately 6 miles east. The village of Cotuit enjoys a shoreline on Nantucket Sound, Poponesett Bay, and Cotuit Bay.

The extended period of growth was fueled largely by the healthy economics of the state and the country, coupled with advantageous tax benefits of second-home ownership. Greater Boston, with a population in excess of three million people, boomed economically during the 1980's and provided a great reservoir of people utilizing Cape Cod as a location for a second home or vacation destination for weekends and summers. The local economy became dominated by the construction industry and the resultant spin-offs including real estate offices and the like. Also, due to the public transportation (busses from Hyannis and trains from Kingston) the town of Barnstable has the unique distinction on Cape Cod of being accessible to Boston for commuters.

## AREA, TOWN AND NEIGHBORHOOD DATA (cont'd)

Beginning with the Tax Reform Act of 1986, combined with other economic factors, the building and real estate industries began to decline. The major impact of the tax reform was that the tax benefits accruing to investment properties were curtailed and investors stopped buying most real estate, especially residential condominiums. However, the builders and developers continued to build houses and condominiums in great numbers. At about the same time, the regional economic boom slowed considerably, including the high tech industries of greater Boston.

As a result, many houses, condominiums, retail, office and warehouse spaces were built in the late 1980's for which there was no longer any demand. From 1989 to 1993 there was a significant numbers of foreclosures on all types of real estate projects. In the town of Barnstable the majority of overbuilding has occurred in new single-family housing subdivisions.

Beginning in 1994 and continuing to the present, the overall economy has rebounded substantially. The demand for residential real estate appears to be in balance in the local marketplace.

### Neighborhood:

The subject property, as mentioned earlier, is located in the historic village of Cotuit in the town of Barnstable, Massachusetts. Situated in the southwest side of Barnstable, the immediate area is defined by Poponesett Bay on the west, the Main Street area to the north, and Nantucket Sound on the east and south. A Neighborhood Map in this section of the report shows the area.

The immediate neighborhood is peninsula that is very rural in nature with thick woods, mature trees, and thick undergrowth. Access to the immediate area is via a paved, two lane road referred to as Main Street. There are multi million dollar estate type properties that have water frontage on either Poponesett Bay or Nantucket Sound. The non-water front properties in the area are large estates surrounded by thick natural wooded buffers. The style of dwellings in this area range from older conventional designs too newly constructed luxurious designs.

**The most important features of the subject property are: 1) the water views of Nantucket Sound and Rushy Marsh that are experienced by the two existing lots along Main Street, 2) the beach rights (across the street) to sandy, salt water beaches along Nantucket Sound. These amenities are extremely important to existing property owners and potential property owners in this area. Buyers of this caliber of property want water views and/or beach rights. That is why these types of amenities contribute to the high desirability of a property and the premium price that buyers pay in order to obtain and enjoy these amenities.**

## AREA, TOWN AND NEIGHBORHOOD DATA (cont'd)

Most town services and shopping are located within three to six miles from the subject property along Route 28 and in the Hyannis area.

In summary, the appraised property is located in a highly desirable area of residential 'estate' type of properties that contribute to the subject's estimated market value. The subject property conforms nicely to the surrounding area.

# PROPERTY DATA

## Description of Sites:

The first, **#1767 Main Street** is depicted on Assessor's Map #16 as Parcel #26 (a copy of the map is enclosed). The map details a rectangular shaped 1.60-acre site with improved frontage along Main Street and frontage along Lowell Road which is a single lane dirt road. The second, **#1783 Main Street** is depicted on Assessor's Map #16 as Parcel #25 (a copy of the map is enclosed). The map details a rectangular shaped 1.70-acre site with improved road frontage along Main Street and frontage along Lowell Road which is a single lane dirt road.

The sites are level throughout the entire property with thick woods and undergrowth encompassing the lots. #1783 Main Street has a 41 year-old Colonial style dwelling with approximately 1,844 s.f. of gross living area, 7 rooms, 3 bedrooms, 2 bathrooms, a brick fireplace, a forced hot air by gas heating system, two decks, and water views of Nantucket Sound. The waste disposal systems in this area are on site and must conform to Title V subsurface sewage disposal regulations. This area also has access to the town water system.

## The Hypothetical Three (3)-Lot Subdivision:

The hypothetical subdivision was to consist of lots #33, #34, & #35. Lot #34 was to have a 49,033 s.f. lot with road frontage along Main Street. This lot would have been located in the same area as the existing 1.60-acre lot referred to #1767 Main Street (a.k.a. Parcel #26) and would enjoy water views of Rushy Marsh and Nantucket Sound. Lot #34 would directly abut, on the north side, the proposed new Lot #35.

Lot #35 would have the existing dwelling in its existing location. However, the lot size was to be revised from 1.70 acres to 48,526 s.f. This property would continue to have road frontage along Main Street and would continue to enjoy water views of Rushy Marsh and Nantucket Sound.

The newly formed hypothetical lot was to be referred to as Lot #33 and was to have road frontage along Lowell Road that is the road to the rear of the existing properties. The newly formed lot was being created from excess, dense wooded 'back' land from #1767 & #1783 Main Street. The appraisers were informed that Lot #33 would also have a right of way easement across Lot #34 exiting out onto Main Street for the sole purpose of a direct path to the beach rights and a water view. These amenities once again contribute to the strong desirability of a property and the premium price that buyers are willing to pay to enjoy these amenities.

## PROPERTY DATA (cont'd)

The creation of Lot #33 adversely affects the value of the 'front lots', referred to as Lots #34 & #35 for the following reasons: 1) The loss of 'back' land from the existing lot configuration. 2) The diminished privacy for Lots #34 & #35 due to the possibility of a new home being constructed near the back of their lots.

Utilities available to the site include electricity, and cable TV. The site is located in Flood Zone C (non flood hazard areas) according to FEMA flood maps.

### Zoning:

The subject lot is located in a Residential RF zoning district. The current zoning regulations in this district require a minimum lot size of 87,120 s.f., due to the Resource Protection Overlay District, and a minimum road frontage of 150'. The zoning requirements at the time the Preliminary Subdivision plan was prepared, required a minimum lot size of 43,560 s.f., and a minimum road frontage of 150'. The Preliminary Plan was dated October 3, 2000.

## PROPERTY DATA  (cont'd)

### Assessment and Taxes:

According to the assessor's records for the Town of Barnstable, the owner's real estate is shown on the assessor's map as follows:

### #1767 Main Street

Map 016, Parcel 026

The 2004 Fiscal Year Assessments are as follows:

| | |
|---|---|
| Land | $635,000 |
| Taxes | $5,288.47* |

### #1783 Main Street

Map 016, Parcel 025

| | |
|---|---|
| Land | $774,600 |
| Building | $142,100 |
| Extra features | $ 2,500 |
| ----------- | |
| Total | $919,200 |
| Taxes | $7,655.37 |

20