**PART III – ANALYSES AND CONCLUSIONS**

## HIGHEST AND BEST USE

The highest and best use of the real estate represents the premise upon which the estimated Market Value is based. Highest and best use is defined as: "That reasonable and probable use that supports the highest present value, as defined, as of the effective date of the appraisal." [4]

> Alternatively, it is "That use, from among reasonable,
> Common, and legal alternative uses, found to be
> Physically possible, appropriately supported, financially
> feasible, which results in the highest land value."[5]

"Implied in these definitions is that the determination of highest and best use takes into account the contribution of a specific use to the community and community development goals as well as the benefits of that use to individual property owners. However, in certain situations the highest and best use of land may be for parks, greenbelts, preservation, conservation, wildlife habitats, and the like."[6]

It is incumbent on the appraiser to consider the highest and best use of a property in two ways. First the appraiser considers the highest and best use of the subject site as if it were vacant, then the highest and best use of the subject as improved is considered. In both cases, a series of steps is followed to arrive at the highest and best use by eliminating uses that do not meet the requirements. The appraiser considers uses that are:

1. Legally Permissible
2. Physically Possible
3. Financially Feasible
4. Maximally Productive

**For the purpose of this appraisal report, this appraiser estimated the Market Value of the subject properties under two different scenarios. 1) As the existing lot configurations, 2) Under the Preliminary Subdivision of land in Cotuit, Massachusetts prepared for Jerome L. & Marian Weinberger, Plan #789, dated October 3, 2000 as depicted on the attached plan.**

---

[4] American Institute of Real Estate Appraisers and the Society of Real Estate Appraisers, Real Estate Appraisal Terminology, revised edition (Cambridge, MA; Ballinger Publishing Company, 1981) Page 126.
[5] Ibid, Page 126.
[6] American Institute of Real Estate Appraisers, The Dictionary of Real Estate Appraisal, (Chicago, 1984) Page 152.

# VALUATION METHODOLOGY, ANALYSIS AND CONCLUSION

This section of the report explains the applicability of recognized approaches to value. These include the Cost Approach, the Sales Comparison Approach, and the Income Approach. Each is briefly described below, including the applicability to the subject, the analysis undertaken, and the reasoning supporting our value conclusion.

The Cost Approach: The Cost Approach is a valuation method, which combines value for the land as if it were vacant and available for development with the depreciated cost to replace the improvements plus entrepreneurial profit. The approach is applicable when each component is independently measurable and when the sum of all components is believed to reflect market value. It is not applicable to unimproved land or obsolete improvements. Hence, this approach to value was not applicable in relation to #1783 Main Street since the existing structure would be considered a 'tear down' dwelling in today's marketplace.

The Sales Comparison Approach: The Sales Comparison Approach compares recently sold similar properties with the subject. Adjustments are made to the sales price of the comparable for dissimilarities in comparison with the subject. Adjustments are made on the basis of conditions of sale, financing, changed market conditions, location, and physical attributes of the site and improvement. When using a number of sales, the adjusted sale prices indicate a range of value for the subject; from this range a final estimated value is selected for the subject.

The Sales Comparison Approach is applicable if properties have been sold with similar characteristics as the subject. There have been sales of comparable properties that this appraiser feels are relevant. The appraiser, in his opinion, has cited the best sales and this is the only Approach considered appropriate.

The Income Approach: The Income Approach analyzes a property's capacity to generate income and converts this capacity into an indication of market value. The approach is suitable for income-producing real estate, which has obvious earning power, but inappropriate for property that has no discernible earning potential. Considering the property type under study, the Income Approach is not applicable for the subject property.

## VALUATION RATIONALE:

The Sales Comparison Approach is the only applicable approach in estimating the Market Value of the subject property "As Is" with 2 parcels "As If" the Preliminary Subdivision Plan were to have been finalized into 3 parcels.

## THE SALES COMPARISON APPROACH

The Sales Comparison Approach is essential in most appraisals of real property value. In applying the Sales Comparison Approach, the appraiser;

1.    Seeks similar properties for which pertinent sales, listings, offerings, and/or rental data are available;
2.    Ascertains the conditions of sale, including the price, motivating forces, and its bona fide nature;
3.    Analyzes each of the comparable properties' important attributes in relation to the corresponding attributes of the property being appraised under the general divisions of time, location, physical characteristics, and terms of sale;
4.    Considers the dissimilarities in the characteristics in terms of their probable effect on the sale price;
5.    Formulates, in light of the comparisons made, an opinion of the relative value of the property being appraised.

An estimate of value of a property is derived using this approach. Similar properties that have been sold recently or are currently offered for sale in the same or competing areas are compared to the subject property. Four categories of data are basic and apply to all types of property. They are (1) date of sale, (2) conditions and terms influencing each sale, (3) location of each property, and (4) physical size and characteristics of each property.

In order to find the most comparable sales, it was necessary to expand the search over one mile in distance and beyond six months in time. All comparables are given equal weight in determining the final value estimate.

**Vacant Land Sales:**

**Sale #1** is located at #1715 Main Street in Cotuit. This property is located on the same side of Main Street as the subject property and two lots to the north of the subject property. The property sold on 9/25/01 for $1,700,000 and consists of a 2.91-acre non-waterfront site and a .67-acre salt-water inlet/marsh site. The property has picturesque views of Rushy Marsh that is across the street and Nantucket Sound. At the time of the purchase, there were two old 'tear down' dwellings on the site. This property is superior to the subject property in terms of its water views and larger, more private lot configuration. The new owner has since torn these dwellings down and constructed a luxurious dwelling, with a two car detached garage, and an in-ground pool in its place. It should be noted that this property with all of its new improvements recently sold for $4,900,000.

# THE SALES COMPARISON APPROACH (cont'd)

**Sale #2** is located at #488 Eel River Road in the village of Osterville that is in the town of Barnstable. The property was purchased on 6/25/02 for $1,075,000. The sale represents a vacant 1.23-acre non-waterfront parcel of land that has beach rights to a small sandy beach on Nantucket Sound. The seller in this transaction originally purchased the 1.23-acre parcel of land on 4/11/02 for $800,000. He then purchased the beach rights for $125,000 on 5/07/02 and subsequently sold the entire package for $1,075,000 on 6/24/02.

**Sale #3** is located at #434 Sea View Avenue in the village of Osterville that is in the town of Barnstable. The property was purchased on 11/18/02 for $1,300,000. The sale represents a 2.44-acre non-waterfront parcel of land that is surrounded on three sides by conservation land and wetland area. This property is slightly superior to the subject property in terms of its lot configuration and its high degree of privacy due to the surrounding conservation land.

**Sale #4** is located at #850 Sea View Avenue in the village of Osterville that is in the town of Barnstable. The property was purchased on 10/30/03 for $1,475,000. The sale represents a 1.22-acre parcel that has a 1,364 s.f. garage at the rear of the lot. The location of this property is superior to the subject's location since it is has multi-million dollar waterfront estates to the north and south of the lot. The location of this lot is one of the most desirable locations in the village of Osterville.

**Sale #5** is located at #147 Peppercorn Lane in Cotuit. This property is located approximately 500 - 600' from the rear property line of the subject property in the southwest direction. This property sold on 8/08/03 for $585,000. The property consisted of a vacant, non-waterfront, non-water view lot with 2.47 acres.

**Sale #6** is located Lot 3E Old Post Road in Cotuit. The property was purchased on 5/26/04 for $1,800,000. The sale represents a 1.89-acre waterfront parcel on Cotuit Bay. The property has 125 lineal feet of frontage along the Bay with a sandy beach. This lot is superior to the subject property since it has direct water frontage.

**Improved Sales:**

**Sale #1** is located at #25 Vineyard Road in Cotuit. This property is located on the same side of the street as the subject property and is two lots to the south of the subject property. The property sold on 7/30/02 for $955,000. At the time of the sale, the property consisted of 1.59-acre site with slight views of Nantucket Sound, a 32-year old contemporary style home (in the shape of an octagon), with 1,477 s.f. of gross living area (according to town records), five rooms, three bedrooms, two bathrooms, a partially finished basement, two decks, a porch and a fireplace.

## THE SALES COMPARISON APPROACH (cont'd)

**Sale #2** is located at #1664 & #1665 Main Street in Cotuit. This property is located on the same side of Main Street as does the subject property and is a short distance to the north of the subject property. The property sold on 8/12/03 for $2,000,000. The sale included an 8 year-old, custom-built Contemporary style dwelling with 5,252 s.f. of gross living area, thirteen rooms, four bedrooms, three bathrooms, a three car attached garage, four decks, two fireplaces, and a view of Rushy Marsh across the street and a distant view of Nantucket Sound.

**Sale #3** is located at #40 Bridge Street in the village of Osterville that is in the town of Barnstable. This property sold on 6/06/03 for $1,750,000. This property is also located across the street from the water and has a slight view of West Bay. The sale included a 1 year-old custom built, Contemporary style dwelling with 4,712 s.f. of gross living area, thirteen rooms, five bedrooms, three and a half bathrooms, a two car attached garage, decks and porches, and three fireplaces.

## INDICATED VALUE VIA THE SALES COMPARISON APPROACH:

Based on the previously mentioned sales in the subject's marketplace. This appraiser is estimating the Market Values for two different scenarios in order to provide the client and the owner with the before and after (the preliminary subdivision plan) estimated values to aid them in their malpractice court action.

**Scenario #1 - Existing lot configurations:** The properties were evaluated using the existing lot configurations with the existing structure on #1783 Main Street. This evaluation yielded the following estimated Market Values for each existing lot.

**#1767 Main Street** = $1,000,000

**#1783 Main Street** = $1,600,000

**Scenario #2 - Preliminary Subdivision Plan:** The properties were evaluated utilizing the Preliminary Subdivision Plan dated October 3, 2000. This plan depicts lots #34 & #35 as having frontage along Main Street, and lot #33 as having frontage along Lowell Road. Since Lowell Road would need some type of improvements (refer to the attached letter from the town of Barnstable Planning Board). These road construction costs would need to be subtracted from the estimated Market Value of this lot (#33). The estimated road costs must be gathered by our client and/or the property owner. Also, lot #34 would have a right of way easement for the exclusive use of lot #33. Lastly, lots #34 & #35 would be further diminished due to the loss of 'back land' area.

The estimated impact to lot #34 due to the right of way easement is $50,000 and the estimated impact to lot #34 & #35 for the loss of the 'back land' is $50,000 **each**. The estimated positive impact to lot #33 with the access to the right of way easement is $100,000 and $10,000 road improvements. With this in mind, the estimated Market Values under this scenario are as follows:

**#1767 Main Street (a.k.a. lot #34) with r.o.w. easement
and loss of back land** = $  900,000

**#1783 Main Street (a.k.a. lot #35) with loss of back land** = $1,550,000

**Lot #33 Lowell Road with the r.o.w. easement across lot #34
and after the road improvements to Lowell Road** = $  840,000

# RECONCILIATION AND FINAL VALUE ESTIMATE

In conclusion, the estimated market values via the Sales Comparison Approach, as of August 27, 2004, are as follows:

### *Existing lot configurations:*

**#1767 Main Street**  = **$1,000,000**

**#1783 Main Street**  = **$1,600,000**

### *Preliminary Subdivision Plan:*

| | | |
|---|---|---|
| **#1767 Main Street (a.k.a. lot #34) with r.o.w. easement and loss of back land** | = | **$ 900,000** |
| **#1783 Main Street (a.k.a. lot #35) with loss of back land** | = | **$1,550,000** |
| **Lot #33 Lowell Road with the r.o.w. easement across lot #34 and after the road improvements to Lowell Road** | = | **$ 840,000** |

| | |
|---|---|
| The Cost Approach: | N/A |
| The Income Approach: | N/A |

The Sales Comparison Approach to value was used in estimating the Market Value of the Fee Simple interest of the subject property.

With the Sales Comparison Approach, the appraisers sought similar sales in the market area. The sales data was considered sufficient in quantity and quality to utilize effectively. The sales recited are a good indicator of current market behavior.

The Cost Approach was not applicable for #1783 Main Street since the dwelling that is on the site at the present time would be considered a 'tear down' in today's marketplace.

The Income Approach was not applicable for the subject property.

PART IV – EXHIBITS AND ADDENDA

Doc:832,969 05-23-2001  2:37
Ctf#:161589
BARNSTABLE LAND COURT REGISTRY

## DEED

David W. Kesner, Trustee of DAW Realty Trust u/d/t dated January 26, 2001 and filed with the Barnstable Registry District of the Land Court as Document No. 825334, for ten dollars consideration paid, GRANTS to Deborah A. Weinberger, of 130 North Street, Watertown, CT 06795, with QUITCLAIM covenants

that certain parcel of land situate in Barnstable, in the County of Barnstable and Commonwealth of Massachusetts, bounded and described as follows:

Northeasterly        by County Road, one hundred fifty-three and 36/100 (153.36) feet;

Southerly            by Lot 29, five hundred eleven and 71/100 (511.71) feet;

Westerly             by a Way, one hundred fifty (150) feet; and

Northerly            by Lot 31, four hundred seventy-nine and 77/100 (479.77) feet.

All of said boundaries are determined by the Court to be located as shown on subdivision plan 11542-W dated April 9, 1957, drawn by A.C. Peters, Engineer, and filed in the Land Registration Office at Boston, a copy of which is filed in Barnstable County Registry of Deeds in Land Registration Book 153 Page 113 with Certificate of Title No. 20533, and said land is shown thereon as Lot 30.

There is appurtenant to said lot an easement of way over the fifty foot way adjoining said lot on the west and extending in a northerly and easterly direction to the County Road, all as shown on said plan, said right to be exercised in common with all others now or hereafter entitled thereto.

No other easements or rights of way, either expressed or implied, are granted in any of the other ways shown on said plan.

Said lot is subject to the restrictions and agreement set forth in Document No. 62,672 from which this Certificate is issued, said restrictions to terminate on January 1, 1977.

Said lot is subject to and has the benefit of the rights referred to in Certificate No. 8771 insofar as the same are in force and applicable.

Said lot is also subject to and has the benefit of the easements, restrictions and rights set forth in Document No. 7750 and Certificate of Title No. 1494 insofar as the same are in force and applicable.

30

Also another lot of land in said Cotuit and bounded and described as follows:

| | |
|---|---|
| WESTERLY | by County Road, one hundred fifty-three and 36/100 (153.36) feet; |
| NORTHERLY | by Lot 31-A, about one hundred twenty-three (123) feet; |
| EASTERLY | by Rushy Marsh Pond; and |
| SOUTHERLY | by Lot 29-A, about one hundred one (101) feet. |

All of said boundaries are determined by the Court to be located as shown on subdivision plan 11542-X dated January 7, 1959, drawn by A.C. Peters, Engineer, and filed in the Land Registration Office at Boston, a copy of which is filed in Barnstable County Registry of Deeds in Land Registration Book 175 Page 34 with Certificate of Title No. 23094, and said land is shown thereon as Lot 30-A.

There is appurtenant to said lot a right of way over Pine Ridge Road to and from Lot 5 on Plan 11542-W in common with all others lawfully entitled thereto in and over same.

Said lot is subject to the restrictions set forth in Document No. 62,672.

Said lot is subject to and has the benefit of the rights referred to in Certificate No. 8771 insofar as the same are in force and applicable.

Said lot is also subject to and has the benefit of the easements, restrictions and rights as set forth in Document No. 7750 and Certificate No. 1494 so far as the same are in force and applicable.

For Grantor's title, see Deed dated February 6, 2001 filed as Document No. 825336 on Certificate of Title No. 160763.

Executed under seal this 24th day of April , 2001.

_____
David W. Kesner, Trustee as aforesaid

STATE OF CONNECTICUT

, ss                        april 24              , 2001

Then personally appeared the above named David W. Kesner and acknowledged the foregoing to be his free act and deed as Trustee as aforesaid, before me

_____
, Notary Public
My commission expires:  4-30-2006

32

**DAW REALTY TRUST**
**TRUSTEE'S CERTIFICATE**

I, David W. Kesner, Trustee of the DAW REALTY TRUST under a Declaration of Trust dated January 26, 2001 and filed with the Barnstable County Registry of Deeds as Document No. 825334 (the "Trust"), hereby certify:

1.    I am the sole Trustee of the Trust as of the date hereof.

2.    The Trust is in full force and effect as of the date hereof, and has not been amended as of the date hereof.

3.    I have been directed by all of the beneficiaries, who are of legal age and to the best of knowledge are not under any disability, of the Trust and with such direction, have full power, authority and legal right under the Trust to convey land in Cotuit, Barnstable County, Massachusetts, as more particularly described in deeds several deeds, filed with the Barnstable Registry District of the Land Court as Documents No. 825336, 825337 and 825338 to Deborah A. Weinberger for nominal consideration, and to take such action as is necessary or desirable to effectuate said conveyance.

4.    I have full power, authority and legal right under the Trust to perform and observe the terms of the transaction referred to herein.

Executed under seal this 24th day of April , 2001.

DAW REALTY TRUST

By: _____

David W. Kesner, Trustee as
aforesaid and not individually

STATE OF CONNECTICUT

, ss        April    24        , 2001

Then personally appeared the above named David W. Kesner and acknowledged the foregoing to be his free act and deed as Trustee as aforesaid, before me

Jacqueline a. _____
Notary Public
My commission expires:  4-34 2086

BARNSTABLE REGISTRY OF DEEDS

33

3 cert ,ok

cert 160203, 160204, 57968

Doc:832,971 05-23-2001  2:37
Ct f#:161590
BARNSTABLE LAND COURT REGISTRY

## DEED

David W. Kesner, Trustee of DAW Realty Trust u/d/t dated January 26, 2001 and filed
with the Barnstable Registry District of the Land Court as Document No. 825334, for ten
dollars consideration paid, GRANTS to Deborah A. Weinberger, of 130 North Street,
Watertown, CT 06795, with QUITCLAIM covenants

certain parcels of land situate in Barnstable in the County of Barnstable and the
Commonwealth of Massachusetts, bounded and described as follows:

| | |
|---|---|
| Easterly | by County Road, one hundred fifty-one and 82/100 (151.82) feet; |
| Southerly | by Lot 30, four hundred seventy-nine and 77/100 (479.77) feet; |
| Westerly | by the easterly line of a 50-foot Way, one hundred fifty (150) feet; and |
| Northerly | by Lot 32, four hundred fifty-eight and 22/100 (458.22) feet. |

All of said boundaries are determined by the Court to be located as shown on
subdivision plan 11542-W dated April 9, 1957, drawn by A.C. Peters, Engineer, and
filed in the Land Registration Office at Boston, a copy of which is filed in Barnstable
County Registry of Deeds in Land Registration Book 153, Page 113 with Certificate of
Title No. 20533 and said land is shown thereon as Lot 31.

There is appurtenant to said lot an easement, in common with other now or hereafter
entitled thereto, over the fifty-foot way adjoining said lot on the west and extending in a
northerly and easterly direction to the County Road, all as shown on Plan 11542-W.

No other easements or rights of way, either expressed or implied, are granted in any of
the other ways shown on said plan 11542-W.

Said lot is subject to the restrictions and agreement set forth in Document No. 68,138
from which this Certificate is issued, said restrictions to terminate on January 1, 1977.

Said lot is subject to and has the benefit of the rights referred to in Certificate No. 8771
insofar as the same are in force and applicable.

Said lot is also subject to and has the benefit of the easements, restrictions and rights set forth in Document No. 7750 and Certificate of Title No. 1494 insofar as the same are in force and applicable.

Also, a parcel of land bounded and described as follows:

Westerly          by County Road, one hundred fifty-one and 91/100 (151.91) feet;

Northerly         by Lot 32-A, about one hundred forty-four (144) feet;

Easterly          by Rushy Marsh Pond; and

Southerly         by Lot 30-A, about one hundred twenty-three (123) feet.

All of said boundaries are determined by the Court to be located as shown on subdivision plan 11542-X dated January 7, 1959, drawn by A.C. Peters, Engineer, and filed in the Land Registration Office at Boston, a copy of which is filed in Barnstable County Registry of Deeds in Land Registration Book 175, Page 34 with Certificate of Title No. 23094 and said land is shown thereon as Lot 31-A.

The above described lot is subject to the restriction set forth in Document No. 68,138.

Said lot is subject to and has the benefit of the rights referred to in Certificate No. 8771 insofar as the same are in force and applicable.

Said lot is also subject to and has the benefit of the easements, restrictions and rights set forth in Document No. 7750 and Certificate of Title No. 1494 insofar as the same are in force and applicable.

Also granting an undivided 1/6 interest in Lot 6 (Sec. 1) as shown on Plan No. 11542-C. Said Lot 6 is subject to rights and easements as set forth in six stipulations by Cotuit Shores Estates, Inc., one with Charles Sumner Morrill, Tr., one with Harry L. Bailey, one with Frank Freemont Smith, one with Martha Taylor et al, one with Hannah E. Hinckley et al, and one with William J. Herman, all filed as Document nos. 2361, 2362, 2363, 2364, 2365 and 2366 respectively and dated March 14, 1927.

For Grantors' title, see Deed dated February 6, 2001 and filed as Document No. 825338 on Certificate No. 160764.

Executed under seal this 24ᵗʰ day of April , 2001.

_David W. Kesner, Trustee as aforesaid_

## STATE OF CONNECTICUT

, ss        April 24                           , 2001

Then personally appeared the above named David W. Kesner and acknowledged the foregoing to be his free act and deed as Trustee as aforesaid, before me

_Jacqueline A. Sisken_
, Notary Public
My commission expires:  4-30-2003

**BARNSTABLE REGISTRY OF DEEDS**

36

LAND SALE #1



LAND SALE #5

IMPROVED SALE #1

EXISTING LOTS

PLAN #700
PRELIMINARY SUBDIVISION
OF LAND IN
COTUIT
BARNSTABLE, MASS.

PREPARED FOR

*JEROME L. & MARIAN WEINBERGER*

SCALE 1" = 100'    DATE OCTOBER 3, 2000

*down cape engineering, inc.*

CIVIL ENGINEERS
LAND SURVEYORS

939 main st. yarmouth, ma 02675

38



Town of Barnstable
# Planning Board
230 South Street, Hyannis, Massachusetts 02601
Tel:(508) 862-4687     Fax:(508) 862-4725

October 29, 2001

Linda Hutchenrider, Town Clerk
Town Hall
367 Main Street
Hyannis, MA 02601

Ms. Deborah Weinberger
130 North Street
Watertown, CT 06795

## DECISION
## DEFINITIVE PLAN #789 JEROME & MARIAN WEINBERGER

The Definitive Plan of Land in (Cotuit) Barnstable MA - prepared for Jerome & Marian Weinberger, dated Oct 3, 2000, referencing Assessors Map 16, Parcel s 25 & 26, in Zone: RF, with 3.32 acres, into 3 lots has been denied by unanimous vote of the Planning Board at a duly advertised and posted Public Hearing.

In making their decision, the Planning Board reviewed the staff report indicating that the Definitive Plan should have been filed on May 5, 2001 to preserve the protections afforded the Preliminary Plan, provided the Definitive Plan was duly submitted within seven months from the date on which the Preliminary Plan was submitted. The Definitive was filed on July 15, 2001, after the seven-month statutory time interval had lapsed. The result being that the Definitive Plan does not conform to the current zoning for the RF zoning district in which the subdivision is located. The applicant did not present information counter to the above-identified conditions.

MOTION was duly made by R. Stahley and seconded by R. Fogelgren that the Planning Board deny the Definitive Plan for Subdivision #789 Jerome & Marion Weinberger for reasons stated in the Planning Staff Report dated 9-4-2001.

The vote was as follows:
AYE:     William Belden, A. Roy Fogelgren, Robert Stahley, Raymond Lang, and Barbara Hill
NAY:     None
ABSENT: Marlene Weir and Lanny Chase

Sincerely yours,

William Belden, Chairman

Date: 10·28·01

CC:     Arnie Ojala, Down Cape Engineering
Enc.:   Planning Staff Report (9/04/2001)

39

# QUALIFICATIONS OF JOHN J. HOPKINS, APPRAISER

## EDUCATIONAL BACKGROUND:

University of Rhode Island
Bachelor of Science, Consumer Affairs - August 1990

## REAL ESTATE COURSES & SEMINARS:

10/1+2/91   The Basics of Appraisal
            National Association of Realtors
10/7+8/91   Real Estate Analysis
            National Association of Realtors
10/15+16/91 Sales Comparison Approach
            National Association of Realtors
10/21+22/91 Cost and Income Approaches
            National Association of Realtors
10/28+29/91 Uniform Standards of Professional Appraisal Practices
            National Association of Realtors
9/27/93     The New Uniform Residential Appraisal Report (URAR)
            The Appraisal Institute
9/28/93     Appraisal Reporting of Complex Residential Properties
            The Appraisal Institute
9/19/95     Residential Forms Update: URAR, 2 – 4 Family, Condo/HUD Seminar
            Mass. Board of Real Estate Appraisers
10/3/95     Uniform Standards of Professional Practice Update Seminar
            Mass. Board of Real Estate Appraisers
6/9/98      Unique & Unusual Residential Properties
            Mass. Board of Real Estate Appraisers
6/18/98     Appraising Complex Residential Properties Seminar
            Mass. Board of Real Estate Appraisers
8/5/98      Uniform Standards of Professional Practice Update Seminar
            Mass. Board of Real Estate Appraisers
8/11/98     2 - 4 Family Residential Income Property Appraisal
            Mass. Board of Real Estate Appraisers
5/29/01     Appraising Complex Residential Properties
            Mass. Board of Real Estate Appraisers
7/10/01     Uniform Standards of Professional Appraisal Practice Update Seminar
            Mass. Board of Real Estate Appraisers
9/13/01     Appraisal Communication:  Writing Convincing Appraisal Reports
            Mass. Board of Real Estate Appraisers
9/20/01     HUD Appraising Seminar
            Mass. Board of Real Estate Appraisers
9/25/01     Fair Lending Seminar
            Mass. Board of Real Estate Appraisers

## QUALIFICATIONS OF JOHN J. HOPKINS, APPRAISER (cont'd)

## REAL ESTATE COURSES & SEMINARS (cont'd):

| | |
|---|---|
| 10/11/01 | Real Estate Fraud and the Appraiser's Role<br>Mass. Board of Real Estate Appraisers |
| 12/03/01 | REA II – Income Property Appraisal Basics, Part A<br>Mass. Board of Real Estate Appraisers – 27-hour course |
| 2/05/02 | Land Valuation – 1-day Seminar<br>The Lincoln Institute of Land Policy |
| 4/02 | REA II – Income Property Appraisal Basics, Part B<br>Mass. Board of Real Estate Appraisers – 30-hour course |

## PROFESSIONAL EXPERIENCE:

September 1991 – Present.
Clancy Appraisal Company, Inc., Falmouth, MA
Staff appraiser for single-family residences, condominiums, and small income producing properties.

August 1990 - September 1991
A.C.E. Transportation, Boston, MA
Sales Representative - Developed and executed a marketing and sales program for a sedan service throughout Eastern Massachusetts

January 1990 - May 1990
Attorney General's Office, State of Rhode Island
Consumer Protection Unit – Advised consumers of rights and options for institutional dispute resolution.

## LICENSES:

Licensed Residential Real Estate Appraiser
Commonwealth of Massachusetts - License #1174LA

Licensed Real Estate Salesperson
Commonwealth of Massachusetts – License #9060464

## OTHER:

Testified before the Massachusetts Appellate Tax Board as an expert witness, qualified on 8/27/96.

Member of the Town of Plainville, MA. Planning Board as of 11/18/96.

Testified before the Massachusetts Land Court as an expert witness, qualified on 10/07/03.

Testified before the Barnstable County Probate Court as an expert witness, qualified on 4/29/04.

## QUALIFICATIONS OF JOSEPH M. CLANCY, APPRAISER

**EDUCATIONAL BACKGROUND:**

1971 – Bridgewater State College (B.A./History)

**APPRAISAL EDUCATION:**

1972 – Northeastern University, Fundamental Real Estate Appraisal
1973 – Northeastern University, Advanced Real Estate Appraisal
1975 – American Institute of Real Estate Appraisers, Course 1A
1976 – Society of Real Estate Appraisers, (now the Appraisal Institute) – R-2 Workshop
     & Examination
1985 – American Society of Appraisers, Code of Ethics Exam

| Date | Courses/Seminars | School/Organization |
|---|---|---|
| 1/22/88 | Residential Land Development | SREA #51 |
| 6/9/89 | Preview of New 2-4 Family Report | SREA, MBREA, AIREA |
| 10/24/90 | Case Study 2-4 Family Appraisal & FDIC Appraisal Guidelines & Appraising in a Downward Market | A.I.R.E.A. |
| 6/13/91 | Real Estate Law for the Real Estate Appraiser | The Appraisal Institute |
| 11/8 through 11/23/91 | Capitalization Theory & Techniques Part A, Course 1BA (6 days) | The Appraisal Institute |
| 3/25/93 | Industrial Valuation | The Appraisal Institute |
| 9/27/93 | The New Uniform Residential Appraisal Report (URAR) | The Appraisal Institute |
| 9/28/93 | Appraisal Reporting of Complex Residential Properties | The Appraisal Institute |
| 5/3/94 | Feasibility Analysis Highest & Best Use of Nonresidential Properties | The Appraisal Institute |
| 2/22/96 | Appraisal of Retail properties (7-hour seminar) | The Appraisal Institute |
| 4/24 & 4/25/96 | I410 Standards of Professional Practice (15-hour course) | The Appraisal Institute |
| 10/22/96 | Subdivision Analysis (7-hour seminar) | The Appraisal Institute |
| 5/18/98 | Appraisal Research, Technology & The Internet: Wired to Work (7.5 hour seminar) | MA Board of R.E.Appraisers |
| 9/24/98 | USPAP Update Seminar (7.5 hour seminar) | MA Board of R.E.Appraisers |
| 12/1/98 | Subdivision Planning for Appraisers Seminar (7.5 hours) | MA Board of R.E.Appraisers |

## QUALIFICATIONS OF JOSEPH M. CLANCY, APPRAISER (cont'd)

| Date | Courses/Seminars | School/Organization |
|------|------------------|---------------------|
| 3/18 & 3/19/99 | Attacking & Defending an Appraisal in Litigation (15 hours) | MA Board of R.E.Appraisers |
| 6/10/99 | Twenty Common Appraisal Errors (3 hours) | MA Board of R.E.Appraisers |
| 9/16/99 | FHA's Homebuyer Protection Plan & The Appraisal Process (7 hours) | The Appraisal Institute |
| 12/16/99 | FHA's Appraiser Examination | U.S. Department of HUD |
| 4/25/00 | Cape Cod Land Bank Forum (3-hour seminar) | MBREA |
| 10/11/01 | Real Estate Fraud & The Appraiser's Role (7.5 hour seminar) | MBREA |
| 10/15/01 | Supporting Capitalization Rates (7.5 hour seminar) | MBREA |
| 2/5/02 | Land Valuation (1-day seminar) | The Lincoln Institute of Land Policy |
| 6/6/02 | Real Estate Law & the Registry of Deeds (7.5 hours) | MBREA |
| 7/14+7/28/04 | Uniform Standards of Professional Appraisal Practice (USPAP) – (15 hours) | MBREA |

## MEMBERSHIP IN PROFESSIONAL ORGANIZATIONS:

| Date | Name of Organization | Designation |
|------|---------------------|-------------|
| 9/17/85 | American Society of Appraisers | ASA (Senior Member) |
| 9/11/95 | Recertified with ASA | Valid through 11/21/2004 |
| 1/15/03 | MA Board of Real Estate Appraisers | MRA |

## PREPARED RESIDENTIAL AND/OR COMMERCIAL APPRAISALS FOR:

Anchor Mortgage Corp., Marstons Mills, MA
Arrow Mortgage Corp., Buzzards Bay, MA
BankAmerica Mortgage, Quincy, MA
Banknorth, N.A., Commercial Dept., Hyannis, MA
Banknorth, N.A., Residential Dept., Falmouth, ME
Banknorth, N.A., Home Equity Dept., Bedford, NH
Boston Safe Deposit & Trust Co., Boston, MA
Cambridge Mortgage Corp., Boston, MA
Cape Cod Co-operative Bank, Yarmouthport, MA
Cape Cod Five, Orleans, MA
Chase Home Mortgage Corp., Approved Appraiser #10719
Chesapeake Appraisal & Settlement Services, Member of Citigroup

## QUALIFICATIONS OF JOSEPH M. CLANCY, APPRAISER (cont'd)

### PREPARED RESIDENTIAL AND/OR COMMERCIAL APPRAISALS (cont'd):

Citicorp Mortgage, Inc., Ballwin, MO
Citizens Bank, Home Equity Services Dept., Riverside, RI
Citizens Financial Group, Inc., Providence, RI
Citizens Mortgage Corp., Quincy, MA
CNI National Mortgage Co., Wellesley Hills, MA
Community Bank, Brockton, MA
ComNet Mortgage Services, Norristown, PA
Conway Financial, Norwell, MA
Crossland Mortgage, Woburn, MA
Dedham Institution For Savings, Dedham, MA
East Cambridge Savings Bank, Cambridge, MA
Express America Mortgage, Scottsdale, AZ
Express Funding, Inc., Irvine, CA
First Citizens Federal Credit Union, New Bedford, MA
First Town Mortgage Corp., Atlanta, GA
Flagstar Bank, Bloomfield Hills, MI
GMAC Mortgage Corp. – Ref. #1733
GreenPoint Mortgage, Charlotte, NC - #0599
Hudson United Bank, Mahwah, NJ
Hyannis Mortgage, Inc., Hyannis, MA
Independence One Mortgage Corp., Chelmsford, MA
InterBay Funding, Inc., Foxborough, MA
Ivy Mortgage, Branchburg, NJ
Lighthouse Mortgage Co., Ltd., Wakefield, MA
Members Mortgage Co., Inc., Stoneham, MA
National City Mortgage, Centerville, MA
Norwood Co-operative Bank, Norwood, MA
Park West Bank & Trust, W. Springfield, MA
People's Savings, Brockton, MA
PHH Mortgage Services, Mt. Laurel, NJ
Plymouth Savings Bank, Falmouth & Marstons Mills, MA
Rockland Federal Credit Union, Rockland, MA
Rockland Trust Company, Falmouth, MA
Salem Five Mortgage Corp., Plymouth, MA
Security Federal Savings Bank, Brockton, MA
Service Credit Union, Portsmouth, NH
Sherwood Mortgage Group, Mashpee, MA
Slade Mortgage Group, Falmouth, MA
Sovereign Bank, Cape Cod & Islands Region
Wainwright Bank, Boston, MA
Washington Mutual, Schaumburg, IL
Wellesley Co-operative Bank, Wellesley, MA

## QUALIFICATIONS OF JOSEPH M. CLANCY, APPRAISER (cont'd)

### PREPARED RESIDENTIAL AND/OR COMMERCIAL APPRAISALS (cont'd):

Governmental Agencies:
        Department of HUD, Boston, MA
        F.D.I.C., E. Hartford, CT
        National Credit Union Administration, Braintree, MA

**EXPERIENCE:**

Full-time appraiser since 1972. Prepared narrative appraisal reports for various banks, towns, and individuals on residential and commercial properties.

**EXPERT WITNESS:**

Testified before the following tribunals:

- Commonwealth of Massachusetts Appellate Tax Board
- Barnstable County Family & Probate Court
- Barnstable County Superior Court
- Dukes County Family & Probate Court
- Dukes County Superior Court
- U. S. Bankruptcy Court, Boston, MA

**OTHER:**
- Town of Falmouth – The 300 Committee & Land Bank
- Town of Mashpee – Self-Help Appraisals
- Town of Bourne – Land Bank Committee & Board of Selectmen
- Town of Yarmouth – Land Bank Committee & Board of Selectmen
- Town of Chatham – Land Bank Committee

**LICENSE:**
Certified General Real Estate Appraiser, Commonwealth of Massachusetts; License #76, Serial #285774.

**CLANCY APPRAISAL CO., INC.**
Merchant's Wharf – Suite 202
80 Davis Straits
Falmouth, MA 02540-3910
(508) 540-9515 – Fax (508) 540-6586
Email: joseph.m.clancy@verizon.net


Attorney Jerry C. Effren
Law Offices of Jerry C. Effren                                    September 13, 2004
25 West Union Street
Ashland, MA 01721

Dear Attorney Effren:

Per your request, the following are Court cases that I have testified in as an Expert Witness:

1) Dukes County Superior Court, Civil Action No. 99-0029 – April, 2004
   Calheta vs. Mooney, (Esther Casey) 43 Twelfth Street North, Edgartown, MA

2) Barnstable Family & Probate Court – January 6 and 8, 2004
   Meldon vs. Meldon, various properties in Yarmouth, Barnstable, and Chatham, MA

3) Suffolk Family & Probate Court – May 21 and 29, 2002
   Haddad vs. Haddad, 434 & 446 Davisville Rd., East Falmouth, MA

4) Barnstable Family & Probate Court – October 27, 2003
   Ford vs. Ford, 1018 Factory Rd., Harwich, 49 Warbler Lane, W. Yarmouth, Factory Rd. & Depot St., Harwich

Also, my hourly rate as an Expert Witness is $175/hour.

Sincerely,

Joseph M. Clancy, ASA, MAR
MA Cert.Gen.R.E.Appr. #76